Here is Case Number 2012-45,51 2012-45,65 H Plus of Atlanta Incorporated Snap Prepaid LLC v. Owl Wireless LLC 3016, Fil Allen X. Good morning, Your Honors. I'm Steve Dorvey from Atlanta, Georgia, and I represent the appellants in this case, Page Plus of Atlanta Incorporated at Snap Prepaid LLC. We are here basically asking the court for five items of relief. First, that the court reverse the lower court's sua sponte ruling on summary judgment that there was no assignment of the 2008 distribution agreement from Page Plus of Atlanta to Snap. Before we get into that, this conditional finality seems like an oxymoron to me. I'm just a little skeptical of our jurisdiction for the case in this kind of a setting. There's one thing that both parties agree on, and that is under this court's prior rulings in the case of Hicks and in the Bergen financial case, that such dismissals do impart finality. You'll have to forgive me for saying I'm the most skeptical of finality when the two parties agree. Well, what I meant... There's one thing we know for sure is that parties can't consent into Article III jurisdiction. I didn't mean that. What I meant is we agree in terms of the argument on the issue that the Hicks case is controlled. Hicks is not a case about a conditional dismissal. It was a dismissal without prejudice that could be brought here. Here we have something that is even more restrictive. They could only bring the case if, in fact, the court were reversed. That's what the dismissal said. Well, it's less and more. What's going on is the statute of limitations doesn't continue to run. This voluntary dismissal, I think a fair point can be made. There is no such thing as a voluntary dismissal without prejudice. If that was a claim that was part of the nucleus of operative facts, res judicata would apply anyway. You didn't bring it in the original case. If you voluntarily dismiss it, quote, without prejudice, you may think you did it without prejudice, but that's assuming res judicata law doesn't exist. So I'm just not sure what that means in this setting where what's going on is the claim really stays very much a part of the case. Only if the case is returned to the lower court would that claim be revived. It was a way for the parties to efficiently address this, to avoid... Rule 54 is efficient. Not in this case. The parties knew the case was coming up on appeal. But you don't... And this case is also distinguished from other cases. This is a case where the successful party... You don't think you could use Rule 54 here? I guess we could, Your Honor, but that's not the way the court wanted to handle it. So the court approved their dismissal without prejudice and the case moved forward. I believe that's the law allowed... The conversation with the judge, I'm pretty confident, didn't involve a conversation about whether this created a final judgment. Well, he reviewed it, he signed it, it was discussed with him, and he viewed it as a final judgment, yes. No, I'm making the point that no one raised the question of whether a conditional dismissal creates a problem for finality purposes. This is news. This is a new topic for conversation in this case, as among the two lawyers and the district court judge. I don't honestly recall, Your Honor. It seems like it was raised at one point and the parties felt comfortable that it was a final decision, but I honestly can't recall those specific discussions. There was a conference call with the court over the order. Well, at all events, we still have the problem. Bottom line, you don't think there's a problem and I guess you're relying on the Second Circuit and the Federal Circuit and saying the other circuits are wrong. We're relying on the Sixth Circuit, the Federal Circuit, the Eleventh Circuit, also the Ninth Circuit. I'm talking about conditional dismissals. Right. They're to the side, the Hicks setting. Right. Okay? So, I thought it was just two that have the conditional dismissals, that kind of manufactured finality. Okay. Some of them are just voluntary dismissals that were alleged to have manufactured finality and some were conditional dismissals. All right. We'll go on to the merits. As I indicated, the court ruled sua sponte that there was no assignment from page plus to SNAP. This damaged our case because the other issue that we want the court to affirm is that OWL breached the contract with SNAP and prepaid after the assignment by not changing its prices appropriately. The pricing provision in the contract provided two things. First, that page plus and then SNAP would get the lowest price available and also that if OWL changed SNAP or page plus' price, that the price of the other distributors would change in the same amount. The way this was done was by discount. So, for example, if my client had a 22 percent discount, another distributor had a 19 percent discount and then OWL moved my client's discount to 20 percent, then we have to move that other discount up 2 percent from 19 to 17 percent. That was the way it was supposed to work. OWL never did that. OWL changed my client's pricing and that breached the agreement without changing the pricing of other distributors and that breached the agreement. Okay, so you need an assignment to bring that claim? Correct. And we believe the court's decision on that was wrong for several points. First, I'm wrong on several points. First, the court didn't give us notice of the decision. The way this all came down was, in March of 2012... So, on the process side of this, I mean, I've read your story. I mean, I'm just not sure I'm following the prejudice point here. In other words, if you're surprised by something the judge or the other side does and you can say the surprise created this problem for litigating this defense or this positive claim, then the surprise seems to make a big difference. But I guess I'm skeptical that had this proceeded in what I'll call the normal path, and I agree this was not the normal path, I'm just not sure how it would have ended up differently. I can't quite see that from the record because it seems like the evidence of an assignment, what evidence there was, it's not in writing, the word doesn't appear anywhere, what evidence there is of it was put forth, and so I guess I'm just kind of struggling. If we were to send it back to Judge Sahari and say, you know, you kind of jumped the gun, this was a funny way to get through this issue, please do it again, do you really think things are going to end differently? Absolutely, Your Honor. You've got to keep in mind... Because you think that paper out there exists? No, and there doesn't need to be a paper. It can be an oral assignment. So there is no document. Right. And they don't even have standing to challenge that. They don't have a dog in the fight. If Party A says, I assigned to Party B, they do not have the ability to challenge that unless they can say that the assignment was somehow, that it was not a sign of one of the contractors. I don't understand this standing idea. They're being sued. They don't want to be sued. This is a way to avoid being sued. Right, but you can't challenge these. An assignment is only challengeable for several different points. If it's not assignable under the terms of the contract, we don't have that here, if there was lack of title, no argument, both parties agreed it had been assigned, that there was some revocation, there was never any revocation, a chance that the non-party would face duplicative liability. They're not going to face duplicative liability. Let me just put the point this way. If I sued Owl, I just filed the lawsuit saying I have the rights to sue Owl under this contract. They're not allowed to say, what? You have no connection to this. You don't have any rights under that contract. It wasn't assigned to you. They're not allowed to assert that defense? No, they're not, because they're not a party to the assignment. And if Party A says I assigned it to Party B and Party B says, yes, you did, that's it. They're not being asked to pay twice. They're only being asked to pay once. So, yeah, that's exactly what I'm saying. You do not have the right to assert that defense, saying that, well, gee, you know, they didn't have the right to, unless, unless the contract said it was not assignable. There was no prohibition against assignment. So I could sue Owl on your claim? If I assigned it to you, absolutely. And you, and you, you agreed that I assigned it to you, and I agreed that I assigned it to you, yes. Okay, but obviously you didn't assign it to me. So I sue Owl. Owl can't say, what are you doing, Judge Sutton? You have no rights under that contract. They can't say that? Oh, it could say that if the parties had not agreed, or if, that would be an issue of lack of title. That would be an issue, they could attack it on lack of title. There's no question here. Well, that proves they have standing to assert claims about the lack of a proper assignment. If there was a lack, if there was any contention that there was lack of title, there was no contention. Well, I guess, I see your point. But anyway, the contract is not, it was not assignable, and the Livonia property holdings case, we believe, says that when there only Contract was assignable. That's your point. Contract was assignable. Everybody who was a party to the assignment agreed it was assigned. That's that. The court also held that there was no How about the consideration point? Yeah, the court held there was no consideration point. First consideration is not necessary. Assignment that is not supported by consideration is not invalid. Is that true under Ohio law? I believe it is. I haven't seen any Ohio law that says one way or the other. But the fact of the matter is that there was consideration. There was a difference in ownership structure, and I realize that relates to consideration between the individuals, not the companies. But SNAP said, we're going to perform this contract. You don't have to perform it anymore, page plus. That's consideration enough. We're going to make the money, take the obligations. You're no longer bound. That's consideration. There doesn't need to be money changing hands. So the court's holding that there was no consideration was also I get the idea that performing a contract in the abstract could be consideration, but What if it's just a license? I mean, couldn't you have a setting where you don't have to do anything? In a way, it's just a gift. You're just saying to somebody, hey, here's the exclusivity arrangement or the licensing arrangement, whatever it is. There's no obligation to sell anything. If you choose to sell things, you do it under these circumstances. So if it's that kind of an arrangement, I'm not sure how you're sparing page plus or PPA, whatever it is, any burden because they didn't have to do anything. The rules were only if you did sell, here are the rules for how you sell. Right. Although I believe the contract would have been terminated for material breach if the party just stopped selling, because that would in fact frustrate the purpose of the contract. And therefore the contract would have been terminated. But how does that show you're sparing them a burden? They no longer have to perform. I mean, there's a burden that you could lose money on the deal. There are all sorts of things that could happen. And they were saved the burden of performing under the contract. SNAP assumed all rights under the contract. SNAP assumed performance. And OWL knew it and dealt with SNAP as if SNAP were the assignee. We also are asking the court to affirm the decision of the trial court that, as I mentioned that OWL breached section 7 of the agreement by not providing us, by not changing the prices of others when they changed our pricing. We also are asking the court to affirm the trial court's ruling that the issue of material breach should at least have gone to the jury. They contend that material breach allows them to get out of jail free card, to get out of contract free card. That is not the law in this circuit or anywhere else. Also, the court should affirm the trial court's decision that Exhibit C of the agreement did not need to be amended by a written, a signed document. The way the prices were handled under the contract was merely, and this is the way the contract reads, we will send you a letter changing the prices, Exhibit C is there for, and then Exhibit C would be amended. So there is no requirement that there be a signed writing by both parties to amend the contract. As I indicated to you, we believe that there are plenty of facts supporting the assignment. And that is the problem here, Your Honor. Keep in mind, in March of 2016, or 2012, the court said the only issue remaining is damages. That was it. Then motions for limine are filed. Motions in limine are filed. But what their motions in limine were, were really motions for summary judgment in disguise. Because they said, you can't introduce evidence because you don't have a claim. And that was a procedure of irregularity. All of a sudden, the judge goes off on these tangents relating to materiality, assignability, and so forth, which had never been raised on summary judgment before. Okay. Thank you. Your time is up, and we're going to take a quick break. And so you'll get your full rebuttal. Okay. Okay? But your red light's on, so you'll get your full rebuttal. Thank you very much. And you're going to join us in just a minute. We're going to take a quick break. Okay. So, Mr. Harper? Yes, sir. Got some time? May it please the Court, good morning, Your Honors. My name is Matthew Harper of the law firm of Eastman and Smith, and I am representing and arguing on behalf of Al Wireless in this appeal. I don't want to pester you on this, but do you have any great insights on finality? If you don't, don't worry about it. If you do, we're all ears. I won't claim great insight, but I'll just make our position clear. We tried to do that in our letter brief, but just to make sure there's no ambiguity. We look at Hicks. Hicks seems to say that if there's a conditional dismissal, it imparts finality to prior orders. Conditional dismissal is a voluntary dismissal. Understood. With regard to the dismissal in this case, our understanding of the language of the dismissal itself was that it was conditional in the sense that if there was a reversal or modification, that we would be granted leave to bring it, essentially, so we wouldn't have to file a motion for leave. It would simply be taken care of. But we don't think that it is similar to the language of the case in, for example, the SEC case or the Purdy case, which had if and only if language that said you can never assert it. Frankly, I don't think that was discussed or considered by the parties at the time. I don't think it was just on the parties' mind. We were dismissing without prejudice. We believe that it created a final order. If the court finds that Hicks is applicable, we think there is jurisdiction. If the court finds that it is not, that Hicks is not applicable and that this should be governed by the decisions of other circuits that dealt with conditional dismissals, then it would appear there is not jurisdiction. And I think that's just an issue for the court to tell us. Okay. Thanks. Thank you. Your Honors, the principal issue on this appeal is whether the district court erred procedurally or subsequently in issuing a summary judgment finding that there was not adequate evidence of an assignment to present to a jury. Because of its centrality to the appeal, I'm going to address it first as opposed to any of the other issues raised on the appeal or the cross appeal. We believe there was no error in this regard, either procedurally or subsequently. It is important to know that this case was preceded by an earlier case filed by PPA and another unrelated corporation called Air Link in 2010. That case proceeded through litigation and it was at the towards the end of the first year of that litigation when there had been depositions of the parties, principally the PPA's principal owners and officers, that the issue of an assignment first came up. So in the course of that entire first proceeding, which was begun with a verified complaint that alleged claims on behalf of PPA, that began with a motion for temporary restraining order seeking to require Al to continue doing business with PPA and included discovery responses, one of which, and it's in the record, answer to interrogatory number four, I believe it was, said specifically that only PPA had enforceable rights under the distributor agreement in question. So we went through that entire first year of litigation until the issue... And that's why they can't sue today. We think that's part of the evidence that there is no assignment and those also constitute judicial admissions that bar them from introducing evidence contrary. So we don't think it's the sole reason, but it is part of the analysis and it was certainly part of the evidence and analysis that was properly before the district court. So it was after that roughly year of litigation that the issue of assignment first arose and it was alleged that there was an oral assignment. There were no documents. We contested that from the beginning and we contested... Out of curiosity, just if there's a real quick answer, why wouldn't there be a statute of the year? It should be in writing. Is the problem here that this wasn't necessarily for more than a year or... The problem, we looked at that, Your Honor. Trust me, we would have raised that if we thought it was a good faith argument and we looked specifically at that because we contended this contract was subject to the UCC. The district court never decided that, but in the course of other summary judgment briefing, we specifically argued that this was a UCC contract for the sale of goods. It was unclear that while a contract itself for the sale of goods, it would be more than $500 under the UCC in Ohio, would have to be in writing. It was unclear whether an assignment of a written contract had to be in writing. So we did not view that as a particularly strong defense because we could not find law on that. But what we found was we didn't challenge the technical validity of an assignment, whether there was some technicality. We challenged whether there was ever an assignment. And you asked, Your Honor, what does Ohio law require? Ohio law has said repeatedly that when somebody comes in and seeks an assignment, seeks to establish an assignment, they have to prove an assignment the same as if they'd have to prove a contract. It is a contract. They have to meet the elements of a contract. So they have to show mutual assent. They have to show a meeting of the minds. They have to show a contract that is definite as to its essential terms. And they have to show consideration. And courts in Ohio have gone into that in some detail, investigating the testimony of the parties to the assignment as to when was the agreement reached, what was said, how was it said, is there a writing? If there's no writing, what's the evidence of the oral assignment? Is there consideration? What is the consideration? And when those elements are not shown, the courts have said there is no assignment. And courts in Ohio, particularly the Hamrick case that we cite in our brief, has granted summary judgment saying no assignment. What if it's just a gift? What if the thing you're assigning is all benefit, no burden? Which I'm wondering if it's not like this. In other words, this is just a right to sell something under certain rules. And so, I mean, you wouldn't, wouldn't you agree with me you wouldn't ask for consideration if the assignment was just a stream of dividends from a company for the next 10 years? And you just said, hey, you're my son. You get this for the next 10 years. I'm assigning you my rights under the contract to this stream of dividends. You wouldn't need consideration. Well, that's not what we have here, though, Your Honor. Okay. So why isn't this close, though? I don't think it's close at all, because in what you're discussing, you're essentially contemplating the assignment of a right to payment. In other words — How about a right to sell? This is a mutually executory contract that still had almost two years remaining on it. So it was not simply an assignment of a, a right to payment. It was, it was a full assignment of the contract that — Contract to? Contract to sell, contract to buy, a contract to transition certain parties, certain accounts to Al. So it was a, it was a full contract of duties. And furthermore, Your Honor, I'm not aware in Ohio of any case drawing that distinction that you're wanting to make, that says that, well, if it's this type of an assignment, or if it's gratuitous or something like that, that it doesn't need to meet the elements of contract. But here — What does the restatement say about this issue? Doesn't it seem to say you don't need consideration for assignments? Well, the restatement may, but the State of Ohio has never adopted the restatement language as cited by PPA. That's our whole problem with PPA's position, is they don't cite any Ohio authority for the proposition. They cite to jurisdictions that have adopted different approaches than the restatement or other commentators. And I look to Ohio law because this contract was plainly governed by Ohio law. There's never been a dispute about that. And Ohio law says, if you want to sue somebody on an assignment, you have to prove up your assignment. And if you can't, you're out of court. And we held them to that burden. The Court held them to that burden. The issues of the evidence, when the evidence was mounted up, it was over a period of time. It was overwhelming that it showed no assignment had been reached. And there was ultimately really no quantifiable, definite, factual evidence of an assignment. Again, it's been established from the beginning there were no documents establishing the assignment, which in and of itself is compelling. This was a — these are not unsophisticated parties. Both parties are represented by counsel, had been represented by counsel. If there was going to be an assignment, if they had actually intended to make an assignment, they had access to qualified counsel who would have no doubt said, well, we're going to do a written assignment, we're going to give notice to Al. That never happened. Well, you know, the underlying contract didn't require Al's approval. I mean, it did kind of leave it loose as to what happened. Well, I disagree that it left it loose, Your Honor. What it left was, is that they had a right to assign, and we've never contested that they had the right to assign, but that doesn't excuse them from actually assigning it. In other words, an assignment, like so many things that are — that courts and lawyers deal with, it's a legal act, and there are requirements to determine whether that legal act has happened or not happened. Ohio says that an assignment is like a contract. And I'm certain that this Court has addressed many contract claims where it is concluded, we're sorry, we understand you're making a contract claim, but you can't prove a contract here. You can't prove the basic elements of a contract. It's no different here. This is not a novel concept. It is simply the same sort of process that we all engage in every day and courts have to make decisions on. So Al has a counterclaim against SNAP? Is that right? Al, in its counterclaim in the second suit, which was filed on behalf of PPA and SNAP, asserted a counterclaim for breach of Section 2.1 of the agreement. So, but if there's no assignment, you have to agree that you can't sue SNAP? No, and let me — if I can finish my answer, Your Honor. We pled the first claim for relief against PPA only for breach of Section 2.1. We pled the second claim for relief against PPA and SNAP jointly in the event the Court found an assignment existed or the jury found an assignment existed. So we have always conceded and understood from the very beginning that if there is no assignment from PPA to SNAP, that we would not have a contract claim against SNAP. We understood that the two go together. The only claim we would still have is the potential claim for breach of contract against PPA because contrary to what counsel for the appellant has said, if they assign it, that does not automatically relieve the assigner of liability. Again, under Ohio law, the assigner remains liable under the assigned contract unless they give notice to the obligor, that would be OWL, and the obligor says, okay, you're not liable anymore. So PPA remained liable on its obligation to transition certain accounts to OWL and instead what they did is they transitioned those accounts to SNAP and SNAP proceeded to sell roughly $20 million worth of product to those two accounts for the remaining period of the contract. The assignment was of a two-year deal, so that two-year deal is done? It's correct. It ended in 2010, Your Honor. So it was a two-year contract. Doesn't it just seem a little strange to say there was no assignment when they went and did $20 million worth of business? Well, no, because OWL had no reason to understand that SNAP was anything than simply another name that PPA was operating under. They never gave us any formal notice where we said we're assigning the contract to a new corporation. They told us early on in the course of contract negotiations that they contemplated a name change and that was a discussion at the highest levels of the negotiation and the signing of the contract, so they told us there would There was never anything else where they said we're not just changing the name, we're changing corporations. So we had no idea. And again, it's not OWL's burden to figure out that there was an assignment. It's their burden to prove that there actually was an assignment and that's where they failed. We think it's important that their evidence had to stack up against the judicial admissions they made where they verified that the claims were PPA's claims. They verified in interrogatory that they were PPA's claims. And then in their deposition testimony, the principals never identified with any specificity how or when they reached an assignment, what exactly they discussed to make an assignment, and indeed in their first depositions before the notion of an assignment was raised, Mr. Harris, who was the principal owner of both companies, testified quite contrary to an assignment. He testified that they kept PPA alive because that's what had their contract and they sold product from PPA to SNAP. Well, that's not evidence of an assignment. That's evidence of a different interrelationship between their companies. Fundamentally, they never amassed evidence that was sufficient to go to a jury. So why didn't you move for summary judgment on no assignment? Your Honor, the reason that that developed that way is the sort of peculiar procedural posture this came up in. Again, the issue of the assignment came up late in the first case, which was dismissed. Then a new case was filed. I see I'm out of time. I'll just The new suit was filed. Previously filed motions for summary judgment on other substantive issues were refiled and resubmitted in the second case. And those were decided and almost all of the claims were dismissed. The court granted judgment to OWL and to PPA on two That was completed at the end of July, I believe, end of June, beginning of July. We had a trial date in September. So by the time all of that was done, we were into the trial process. Motions in limine were due and it developed into that fashion. The court then notably denied our motion in limine, both motions in limine on the assignment, but expressly told the parties that it continued to consider the issue that it doubted the efficacy of the evidence that PPA had, proceeded to get supplemental briefs, specifically told the parties that it had reached a point where it believed this was a matter of law for the court to decide and that it was going to do that. And it did that. Thank you, Your Honor. We fundamentally would ask that this case be affirmed. Our other issues are adequately set forth in our brief. I thank you for your time this morning. Thank you, Mr. Harper. Mr. Dorvey, you've got your rebuttal time. Thank you, Your Honor. As Judge Black asked, why didn't they file a motion for summary judgment? They didn't seek leave to do so. And the fact is, Your Honor, there was never a motion for summary judgment in this case. They keep saying we put them to their burden of proof, we put them to their burden of proof. They filed a motion in limine and they lost. And the court said this issue is going to the jury. Now, their comment that the court said, well, I'm expressing I mean, if we send it back, then they can file their motion for summary judgment. What is that? Right. And they will lose because we will be able to put in all our evidence, do all our briefing, something we were never given an opportunity to do. You have to keep in mind. Tell me the pieces of evidence that are not in the record because of this process. Well, everything that was in the motion for reconsideration was just denied. There was a motion for reconsideration. So it isn't in the record? It is in the record. There's nothing beyond the evidence you put in support of the motion for reconsideration? Aside from, you know, my clients would testify at trial that they assigned and so forth, or they could file affidavits, but there would be the affidavit of the accountant, but there would be enough evidence to show at least a question of fact. You know, the judge found that he had some concerns and he said, I'm going to think about this. He didn't mean for the next six months. He meant over the weekend when he issued an order denying the motion in limine. The next thing he did relating to the assignment was ask us to breach the issue of what the effect of a jury holding would be. That was the last word we had. So we have, it's going to the jury, it's going to the jury, and tell us what happens when the jury decides. That was the procedural posture of the case when the court called us up on Friday afternoon and said, you know, I've changed my mind. I think I want to decide the issue of the assignment. Now, I bet that surprises you, doesn't it? And it sure did because we were never put to the test. Remind me why, I mean, because all of this would go away if in this case this claim could have been brought by SNAP and or Page Plus, right? Because then you wouldn't have to worry about assignment. Because one way or the other, someone would, why in the first litigation did that eliminate Page Plus' right to alternatively plead in this case? What happened that tied your hands? I'm still not sure I understand that point. I don't know that anything tied our hands. We just, you know, we asked our clients, you know, look, what happened here? And we noted that contrary to what they said, we sent them and they asked us for information on the new corporation that they would be dealing with. So they knew that the contract had moved to a new corporation. I'm just making the point, why in this case couldn't the claims be brought by SNAP and or Page Plus? I thought that stemmed from a feature of the first case. And I'm just, that's the part I'm not. No, it didn't stem from a feature of the first case. Okay, so then what's the answer to the why? Why? I'm not sure there isn't a reason why it couldn't be done in the alternative. But the fact of the matter was, there was an assignment to SNAP and we, rather than pleading the alternative and trying to dance back and forth, we just told the truth. The first case involved the interrogatory answer was among these two parties, which is the claim we said Page Plus. When we got into the new case, we realized that that interrogatory answer was incorrect and therefore we amended it. So there was no judicial admission. I got it. Okay. Thank you very much, Your Honor. Yeah, thanks to both of you for your helpful briefing, your supplemental briefs, and for your helpful oral arguments. We appreciate it. The case will be submitted and the clerk may call the last.